**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JOHN DOE, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| | * | **Civil Case No.: SAG-26-3330** |
| **v.** | * | |
| | * | |
| **ROBERT GUADIAN,[1] *et al.*,** | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs John Doe and his two minor children have filed a Complaint (ECF No. 1) and Motion for a Temporary Restraining Order (ECF No. 3) against Defendants Robert Guadian, the Field Office Director of the Washington D.C./Baltimore ICE Field Office, Todd Blanche, the Attorney General of the United States, Markwayne Mullin, the Secretary of Homeland Security, and Marco Rubio, the Secretary of State, alleging, in relevant part, violation of Doe's procedural due process rights. This Court held a motions hearing on August 18, 2026, and has considered the briefing including the Motion, (ECF No. 3), Defendants' Response in Opposition, (ECF No. 11), and Plaintiffs' Reply, (ECF No. 12). For the reasons below, the Court will grant the Motion (ECF No. 3).[2] An implementing Order is filed herewith.

**BACKGROUND**

[1] Under Federal Rule of Civil Procedure 25(d), a government official serving in their official capacity is automatically substituted as a party. Robert Guadian is the Field Office Director of the Washington, D.C. ICE Field Office, making him the new head of the Baltimore sub-office.

[2] Record cites throughout this Opinion refer to original ECF numbers in the original case filed this litigation, which has been sealed and terminated. Having determined that the sensitive and urgent nature of this case requires a higher degree of confidentiality and security than it was originally filed under, the Court ordered the sealing of the original record and a refiling of the case and all briefings under pseudonym. An amended version of this Opinion will issue when the refiling is complete, to align the citations with the filings in this case number.

An immigration judge (IJ) granted John Doe Deferral of Removal under the Convention Against Torture (CAT) in July of 2024, after finding that he was more likely than not to be tortured by the government or by individuals acting with the acquiescence of the government if he were returned to Mexico. (ECF Nos. 1-1 & 11). *See also* 8 C.F.R. § 1208.18(a)(1) (to qualify for protection under the CAT, torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity," who must be "acting under color of law."). The IJ based that finding on Doe's provision of substantial assistance to the Department of Justice (DOJ), and his testimony against defendants affiliated with Mexican drug cartels. (ECF Nos. 1-1 & 11). Providing this information to U.S. law enforcement authorities put his life, and the life of his family, at significant risk.

After the grant of CAT Deferral, ICE released Doe from immigration custody on an Order of Supervision (OSUP) in November of 2024. (ECF No. 1 ¶¶ 30–31). He has since resided in Maryland and complied with all laws and OSUP requirements. (*Id.* ¶ 33). But in January of 2026, Doe reported for a routine ICE check-in and was taken into ICE custody. (*Id.* ¶ 35). He spent six months in a Louisiana ICE detention facility, and during this time, his attorney filed a Petition for Writ of Habeas Corpus in the Western District of Louisiana. (*Id.* ¶¶ 38–41). That Petition remains pending. (*Id.* ¶ 41).

Without any notice, on July 10, 2026, Defendants removed Doe to Guatemala. (*Id.* ¶ 42). Guatemalan officials refused to accept Doe, stating that they were only accepting Guatemalan citizens. They turned him over to Mexican officials at the Mexican Consulate to be returned to Mexico. (*Id.* ¶¶ 43–44; ECF No. 1-4 at 3–4). Fortunately, after speaking with Doe's attorney and learning about his CAT protection, a Mexican consular official informed Doe that he would not be taken to Mexico and he was instead returned to the United States that same day. (*Id.* ¶¶ 44–45).

After he returned, Defendants repeatedly moved Doe between temporary holding cells and the airport in Texas, without affording him the opportunity to speak to his family or his attorney. (ECF No 1-1 at 4). On July 15, 2026, Doe's attorneys filed a Motion for a TRO in his *habeas* case in the Western District of Louisiana, detailing his removal to Guatemala and his being turned over to Mexican authorities. (ECF No. 1 ¶ 46). Counsel asked for his immediate release from detention or an injunction on his removal from the United States. (*Id.* ¶ 47).

Without any warning or notice to Doe's counsel, on or about July 15 or 16, 2026, Defendants wrongfully removed Doe from the United States for a second time. (*Id.* ¶ 48). This time, they allegedly removed him directly to Mexico, which would violate United States law and their obligations under the Convention Against Torture. (*Id.*). Once again, Mexican officials properly refused to accept Doe and, again, he was returned to the United States. (*Id.*). After this second return, Doe spent approximately ten days being repeatedly moved from holding cells to the airport and back again, only sleeping for two nights in a detention facility. (ECF No. 1-1 at 5).

On July 21, 2026, Defendants purportedly served Doe with a Notice of Termination of Deferral of Removal ("the Notice") pursuant to 8 C.F.R. §§ 208.17(f) and 1208.17(f). (ECF No. 11-4). The Notice stated that the Department of State had received diplomatic assurances from the Mexican Government that Doe would not be tortured if returned to Mexico, and that Acting ICE Director David Venturella and Secretary of State Marco Rubio had consulted and determined that these assurances were reliable. (*Id.*).[3] This Notice, signed by Acting Director Venturella, gave no other information or details about the diplomatic assurances or the process

---

[3] It was agreed upon by the parties at a hearing that this form of termination, which requires the participation of a Cabinet member and another high-ranking U.S. government official, is extremely rare. No information was provided to explain why these top-level officials personally involved themselves in this case or why they terminated Doe's CAT Deferral within a week of his removal to Mexico on July 15 or 16, allegedly in violation of the CAT.

followed. (*Id.*). Doe does not speak or read English, and there is no Spanish translation on the Notice or indication that it was translated for him. (*Id.*). Doe purportedly refused to sign the Notice. (*Id.*).[4]

On July 23, 2026, the government filed a Response to Doe's TRO Motion in his Louisiana *habeas* case. (ECF No. 1 ¶ 49). This Court has reviewed the filing, in which the government acknowledges removing Doe to Guatemala but asserts that he had not been removed "to Mexico in conformance with the Order of the Immigration Judge." The filing also fails to inform the *habeas* court that Doe's CAT Deferral had been terminated two days earlier by Acting Director Venturella (*Id.*). Throughout the time Doe was detained, his attorneys repeatedly sought to speak to him but were largely unsuccessful, as he was constantly being moved between detention facilities or was not visible in the ICE locator system. (ECF No. 3-1 at 3). Doe and his counsel had just one privileged legal call on July 25, 2026, and his attorneys otherwise relied on information from his wife to inform them of what was happening. (*Id.*).

On July 30, 2026, the Western District of Louisiana denied Doe's Motion for a TRO. (ECF No. 1 ¶ 50). The next day, August 1, 2026, Defendants took Doe to Texas and deported him to Mexico without his phone or other personal belongings. (*Id.* ¶ 51; ECF No. 1-4 at 6). He has been in hiding since that date, fearing that the cartels that he provided information against will find him and torture or kill him before he can return to the United States. (ECF No. 1-4 at 6).

## PROCEDURAL HISTORY

On August 5, 2026, Plaintiffs John Doe and his two minor children, who remain in this country, filed a Complaint (ECF No. 1) and Emergency *Ex Parte* Motion for Temporary

---

[4] Doe also never mentioned the Notice or termination of CAT Deferral to his wife or attorneys, who remained unaware of the termination until Defendants' recent representations in this case. (ECF No. 12 at 2 n.1).

Restraining Order and Preliminary Injunction (ECF No. 3) with this Court. On August 7, 2026, this Court held a Telephonic Hearing on the Motion, (ECF No. 9), and on August 10, 2026, the Court set an expedited briefing schedule (ECF No. 10). The Defendants filed their Opposition to the Motion on August 12, 2026, (ECF No. 11), and the Plaintiffs' Reply was filed on August 14, 2026, (ECF No. 12). The Court held a hearing on the Motion on August 18, 2026, and held the Motion *sub curia*. (ECF No. 22). This Opinion follows.

## DISCUSSION

### I. Jurisdiction

Defendants contest this Court's subject matter jurisdiction, arguing that 8 U.S.C. §§ 1252(a)(4) and 1252(g) preclude judicial review over these claims. (ECF No. 11 at 5–6).

Defendants rely upon two provisions of 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal." The Fourth Circuit's recent published decision in *Suri v. Trump* proves particularly instructive in evaluating the reach of this statute. *Suri v. Trump*, --- F.4th ----, 2026 WL 2123557 (4th Cir. July 23, 2026). Though, unlike in *Suri*, Doe's claim does not arise in *habeas*, the statute regarding judicial review is the same, and the subsections "cannot be read in isolation." *Id.* at *18. The court in *Suri* recognized that "[t]here is a 'strong presumption in favor of judicial review of administrative action,' and the Supreme Court instructs that we should interpret 'statutes to allow judicial review . . . absent a clear statement.'" *Id.* at *13 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 137 (2020); *Kucana v. Holder*, 558 U.S. 233, 237 (2010)) (cleaned up). These interpretive canons apply broadly to judicial review, not only to claims sounding in *habeas*. *Thuraissigiam*, 591 U.S. at 137.

Both proffered subsections are under the heading "Judicial Review of *Orders of Removal*." 8 U.S.C. § 1252. But here, Doe is not challenging his order of removal. He is

challenging the violation of his due process rights in the termination of his CAT Deferral and his resulting removal from the United States to Mexico.[5] (ECF No. 12 at 1).

**a. Section 1252(a)(4)**

Defendants first argue that § 1252(a)(4) bars judicial review of Doe's claims. This statute states, in relevant part, that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture." But this statute "does not, as Defendants seem to suggest, apply to any claim that simply relates to CAT." *D.V.D. v. U.S. Department of Homeland Security*, 821 F.Supp.3d 102, 136 (D. Mass. 2026). Instead, "courts have uncontroversially interpreted section 1252(a)(4) to provide federal courts of appeal with exclusive 'jurisdiction to review a noncitizen's factual and legal challenges to a denial of relief pursuant to the CAT, or CAT order.'" *Id.* (citing *Ali v. Garland*, 33 F.4th 47, 54 (1st Cir. 2022); *Nasrallah v. Barr*, 590 U.S. 573, 585 (2020) ("[Section] 1252(a)(4) now provides for direct review of CAT orders in the courts of appeals."); *Suradi v. Sessions*, 701 F. App'x 633, 634 (9th Cir. 2017) ("We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(4), which 'encompasses legal and constitutional issues arising from claims for deferral of removal under CAT.'"); *Subrata v. Att'y Gen. of U.S.*, 378 F. App'x 226, 228 n.1 (3d Cir. 2010)). Defendants, in this case, did not pursue the far more common path for terminating CAT protection through the immigration courts to create a standard CAT order.

To accept Defendants' argument that Doe's claims here may only be heard by a court of appeals would, in effect, bar him from *any* judicial review of the summary executive actions taken in this case, as there is no clear avenue for this claim to be adjudicated in a court of

[5] Plaintiffs' counsel conceded at the hearing that the Complaint needs to be amended because the fact of the diplomatic assurance termination emerged after its filing. The Court focuses, for purposes of this Opinion, on evaluating Plaintiffs' likelihood of success on the merits of Count III, the claim that Doe has been deprived of procedural due process. (ECF No. 12 at 1).

appeals (COA). The appeal period for the initial grant of CAT Deferral to the Board of Immigration Appeals (BIA) ended in 2024, and although the government reserved the right to appeal, it chose not to do so. (ECF No. 1-1 at 13). Had Defendants terminated Doe's CAT Deferral using the standard immigration court process outlined at 8 C.F.R. § 1208.17(d), a path to judicial review through the BIA to a COA would have existed. Instead, Defendants chose a path to termination that contains no delineated appellate process and created no factual or administrative record. This Court cannot accept the nonsensical result that Doe is unable to obtain judicial review of these executive actions by virtue of the path to termination chosen by the Executive itself.

The suggestion that judicial review is available in the COA is also flawed. It is well-established that the COAs are not factfinders, nor are they charged with creating the factual record upon which their appellate decisions are made. *See* Fed. R. Civ. P. 52(a)(1) ("[T]he [district] court must find the facts specially and state its conclusions of law separately."); *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("[Appellate courts] are [] court[s] of review, not of first view."). "[S]tatutes that provide for only a single level of judicial review in the courts of appeals are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrative record." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991) (cleaned up). Section 1252(a)(4), therefore, cannot foreclose this Court's review of Doe's constitutional claims, as there exists no record to appeal to the COA.[6] The Notice contains no factual basis for the termination, nor have Defendants proffered such facts in their briefing or at the motions hearing. (ECF No. 11-

[6] The BIA's jurisdiction to review this termination of CAT Deferral is also foreclosed under 8 C.F.R. § 1208.18(c)(3), stating that "[o]nce assurances are provided . . . the alien's claim for protection under the Convention Against Torture shall not be considered further by an immigration judge, the Board of Immigration Appeals, or an asylum officer."

4). The COA would necessarily have to remand the matter to a lower court for factfinding before it could adjudicate Doe's constitutional and other claims.

Further, the question of whether or not Doe ever had notice of, or the opportunity to appeal, the summary revocation of his CAT Deferral is central to the due process claims he presents. There is no evidence in the record today that proves that he was served with the Notice in a language or manner that he could understand, or even that proves he was served with the Notice at all.[7] Even if his due process claims might have some bearing on the validity of the CAT Deferral termination in the immigration context, the Fourth Circuit has found that any potential risk stemming from allowing collateral district court review "is far outweighed by the deprivation of liberties held by all who reside in the United States." *Suri*, 2026 WL 2123557, at *17 (cleaned up). Section 1252(a)(4), therefore, does not foreclose this Court's jurisdiction over Doe's due process claims.

**b. Section 1252(g)**

The second statute proffered by Defendants states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." But this statute applies only to discretionary decisions, as the Supreme Court "has characterized § 1252(g) as a 'discretion-protecting provision.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485–487 (1999) ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.")). In

[7] Doe's attorneys were entirely unaware of the CAT Deferral termination despite having spoken with him days after the Notice was purportedly served. It seems unlikely that Doe hid the termination from his own counsel. An evidentiary hearing, to include testimony from Doe and various government officials, will be required to find the facts and make a final decision on the merits about the process Defendants provided. That hearing cannot occur without Doe's return to this country, due to his lack of phone access in the location where he is hiding.

the Fourth Circuit, "*Bowrin v. U.S. INS*, 194 F.3d 483 (4th Cir. 1999) made plain that review of agency decisions involving pure questions of law 'do not fall into any of the three categories enumerated in § 1252(g).'" *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025) (citing *Bowrin*, 194 F.3d at 488). Thus, the Court finds that Doe presents a "pure question of law: whether Defendants exceeded their authority in returning him to [Mexico]" without affording him due process. *Id.*

This district's *Abrego Garcia* case provides substantial support for a finding of jurisdiction. Judge Xinis's Order to return Abrego Garcia to the United States after his wrongful deportation was litigated and appealed exhaustively, from the District Court to the Fourth Circuit to the Supreme Court and back again multiple times. *Abrego Garcia v. Noem*, Civ. No. 8:25-00951-PX, 2025 WL 1024654 (D. Md. Apr. 4, 2025), *issuing opinion at*, 777 F.Supp.3d 501 (D. Md. Apr. 6, 2025), *enforced*, 2025 WL 1021113 (4th Cir. Apr. 7, 2025), *enforced*, 145 S.Ct. 1017 (Apr. 10, 2025), *amended by*, 2025 WL 1085601 (D. Md. Apr. 10, 2025), *enforced*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025). The Defendants similarly argued that the Court lacked jurisdiction under § 1252(g) in that case, but the Fourth Circuit and Supreme Court did not agree. This Court therefore finds that § 1252(g) does not bar review of Doe's similar constitutional claims here.

## II. Analysis

Having found that this Court has jurisdiction over Doe's due process claims, the Court turns to his Motion for a Temporary Restraining Order.[8] "The standard for a temporary

---

[8] The Defendants do not specifically address Doe's due process claims in their Response in Opposition to the Motion. (ECF No. 11). Instead, the briefing solely addresses subject matter jurisdiction and legal standards for termination of CAT Deferral under 8 C.F.R. § 208.17(f). (*Id.*) The only part of the Defendants' Opposition that addresses the likelihood of success factor states that "Plaintiffs cannot prove that Defendants were prohibited from removing [Doe] from the United States." (*Id.* at 8). Despite the lack of meaningful analysis in the briefing, the Court will analyze each of the *Winter* factors in turn.

restraining order is the same as a preliminary injunction." *Maags Auditorium v. Prince George's Cnty.*, 4 F.Supp.3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). A preliminary injunction is "an extraordinary remedy," that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Such preliminary relief is warranted when the movant demonstrates that (1) the movant is likely to succeed on the merits, (2) the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities favors preliminary relief, and (4) injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter*, 555 U.S. at 20). When the Government is the opposing party to a motion for a preliminary injunction, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court considers each factor below.

**a. Likelihood of Success on the Merits of Doe's Due Process Claim**

Plaintiffs must show that there is a likelihood of success on the merits on at least one of their claims. *Winter*, 555 U.S. at 20. To evaluate this factor, this Court will exclusively address the Plaintiffs' procedural due process claim in Count III. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In assessing whether a deportation or asylum hearing has comported with due process, we are guided by the principles of *Mathews*, in which the Court recognized that 'the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Rusu v. U.S. I.N.S.*, 296 F.3d 316, 321–22 (4th Cir. 2002) (quoting *Mathews*, 424 U.S. at 333) (cleaned up). "To succeed 'on a claim that [their] statutory or regulatory rights were infringed,' a noncitizen must establish both a violation of that right and that they were 'prejudiced by any such

violation.'" *Rodriguez-Solis v. Blanche*, 177 F.4th 266, 277 (4th Cir. 2026) (citing *Rusu*, 296 F.3d at 320).

The parties both agreed at the hearing in this matter that termination of CAT Deferral under § 1208.17(f) is exceptionally rare, and that *Khouzam v. Attorney General of U.S.*, 549 F.3d 235 (3d Cir. 2008) is the only case to have ever addressed diplomatic assurance termination and the process required.[9] Under Third Circuit law, the court in *Khouzam* recognized "that due process guarantees three basic things in the removal context." *Id.* at 257. First, the alien is entitled to "factfinding based on a record produced before the decisionmaker and disclosed to him or her," including "a reasonable opportunity to present evidence on his or her behalf." *Id.* (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003)) (cleaned up). "Second, the alien 'must be allowed to make arguments on his or her own behalf.'" *Id.* (quoting *Abdulai*, 239 F.3d 549). Third, the alien must receive "an individualized determination of his or her interests." *Id.* (quoting *Abdulai*, 239 F.3d 549). "These elements are predicated upon the existence of a 'neutral and impartial' decisionmaker." *Id.* The procedure employed by the Defendants in this case mirrored the procedure used (and found constitutionally infirm) in *Khouzam*, and this Court finds persuasive and will adopt the Third Circuit's due process analysis.[10]

---

[9] Although *Khouzam* is persuasive authority, this case and *Khouzam* differ in one important way – *Khouzam* was a *habeas* case, and the petitioner remained in the United States while the issues surrounding the termination by diplomatic assurances were litigated. Doe's removal from the United States only ten days after the Notice was purportedly served, without any notice of the termination to his attorneys, puts this case in a different procedural posture and exacerbates the due process concerns.

[10] The court in *Khouzam* determined that, under Third Circuit law in 2008, the district court lacked *habeas* jurisdiction to review Khouzam's claims. This Court, however, is bound by current Fourth Circuit law. Though the Court will adopt *Khouzam*'s due process analysis and procedural blueprint, the Court notes the circuit split in *jurisdictional* law between the Third and Fourth Circuits today. *See Suri*, --- F.4th ----, 2026 WL 2123557, at *22 ("The Third Circuit departed from both of the Second Circuit's decisions on stay motions and [the Fourth Circuit]

As in *Khouzam*, on the record before this Court, Doe "was afforded no notice and no hearing whatsoever." *Id.* The Third Circuit concluded that those facts first deprived Khouzam of any factfinding based on a record that was disclosed to him, because he was not permitted "to *see* the written diplomatic assurances that had been obtained from [his home country], and provided no information pertaining to the Government's reasons for crediting those assurances." *Id.* The Third Circuit rejected the government's "bare assertions" and found "no record supporting the reliability of the diplomatic assurances that purportedly justified the termination of his deferral of removal." *Id.*[11] Second, the Third Circuit found that Khouzam had been deprived of an "opportunity to make arguments on his own behalf" as he (like Doe) was not provided notice until the termination decision had already been made. *Id.* at 257–58. Finally, the Third Circuit concluded that Khouzam was "denied his right to an individualized determination. Even if we assume, in the absence of a meaningful record, that the Government considered all aspects of [his] case prior to terminating his deferral, we again see no indication that [he] had the benefit of a neutral and impartial decisionmaker." *Id.* at 258. Ultimately, the Third Circuit ruled that the "complete absence of any process by which Khouzam could have challenged the Government's termination decision" substantially prejudiced him. *Id.*

---

in *Suri IV* . . . We respectfully disagree with its interpretation."). This circuit split does not affect this Court's due process analysis.

[11] The opportunity to challenge the reliability of the unattributed "diplomatic assurances" is critical in Doe's case, as this Court takes judicial notice of various recent statements by U.S. government officials, including President Trump, that seemingly contradict any diplomatic assurances that the Mexican government can control cartels' unlawful actions and protect Doe from torture. *See* FOX NEWS, *Interview: Sean Hannity Interviews Donald Trump at the White House*, at 1:25–1:32 (YouTube, Jan. 8, 2026) ("The cartels are running Mexico. It's very, very sad to watch and see what's happened to that country, but the cartels are running it."); U.S. Dep't of State, Fact Sheet: Designation of International Cartels (Feb. 20, 2025), https://www.state.gov/designation-of-international-cartels. The State Department website today prohibits U.S. government employees from travel and warns U.S. citizens "Do Not Travel" to various parts of Mexico due to cartel activity. *See* U.S. Dep't of State, Travel Advisory – Mexico, https://travel.state.gov/en/international-travel/travel-advisories/mexico.html (last visited August 20, 2026)

In light of that persuasive analysis, this Court readily concludes that the manner in which Defendants revoked Doe's CAT Deferral likely violated his procedural due process rights, exceeding the Defendants' lawful authority. "[D]ue process requires, at a minimum, that the [executive] adopt procedures to ensure that [noncitizens] are accorded an opportunity to be heard at a meaningful time and in a meaningful manner, i.e., that they receive a full and fair hearing on their claims." *Rusu*, 296 F.3d at 321–22. "If a [noncitizen] is not able to examine the evidence against him, to present evidence on his own behalf, or to cross-examine witnesses to the extent of his statutory rights under 8 U.S.C. § 1229a(b)(4), then he has failed to receive a full and fair hearing consistent with due process." *Id.* at 321 n.7. By any metric, the denial of *any* opportunity to be heard or *any* hearing must be found to have violated Doe's constitutional rights, and the Court therefore finds a strong likelihood of success on the merits of his procedural due process claim.

**b. Irreparable Harm**

Plaintiffs must also show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. The record clearly demonstrates that there is an imminent danger of irreparable harm, in the form of potential torture or even death, if Doe is not immediately returned to the United States. First, an immigration judge granted Doe CAT Deferral only two years ago. At that time, the immigration judge made the determination that not only was it possible, but it was more likely than not that he would face torture if returned to Mexico. (ECF No. 1-1). Second, the DOJ averred in 2023 that if Doe "[was] deported, [and he were] returned to Mexico, [ ] he may encounter individuals against whom he cooperated." (ECF No 14 at 9). This would put him in imminent danger of harm or death. And third, Doe was sent a region of Mexico where there is active cartel activity, without any of his money or personal belongings, reliant on the help of strangers while attempting to remain in hiding. (ECF

No. 1-4 at 6). The Court thus finds that the irreparable harm factor overwhelmingly supports the immediate necessity of ordering Doe's return to the United States.

**c. Balance of Equities and Public Interest**

Finally, the Court must balance the equities of the parties and find that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 435. To balance equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell, AK*, 480 U.S. 531, 542 (1987)). And in considering the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

"Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken,* 556 U.S. at 436. But this public interest is significantly greater where, as here, the individual removed faces substantial harm due to his cooperation with U.S. law enforcement agencies. Doe's assistance and cooperation with the DOJ is the reason he was granted protection under the CAT and is the reason his life is in danger today in Mexico. There is an immense public interest in ensuring that persons who risk their personal safety to assist the government in prosecuting wrongdoing are not placed in harm's way by the very entity they assisted.

The Defendants face relatively minimal hardship in being required to comply with the fundamental constitutional right to due process, particularly where, as here, there is a regulatory process in place for terminating CAT Deferral that comports with due process concerns. *See* 8 C.F.R. § 1208.17(d); *see also Roe v. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020) ("[T]he Government has not shown what institutional harm arises from relief that merely requires it to comply with its own policies."). And a system where government witnesses may be summarily deported without any due process protections (and thus would logically choose not to testify

or assist law enforcement) would ultimately harm the Defendants, other witnesses in Doe's position, and the American people at large.

This Court acknowledges that Defendants will have to expend some effort and resources in facilitating Doe's return to the United States. But Defendants have managed the task twice before in the last few weeks when they wrongly removed Doe on the two prior occasions, and the equities weight strongly in the Plaintiffs' favor in light of the harms likely to accrue in the absence of his return.

Having found all *Winter* factors satisfied, this Court concludes that preliminary relief is warranted in this case. The Plaintiffs request that the Court order Doe's return to the United States, and that the Court order that he be detained within 200 miles of this Court. (ECF No. 3 at 2).

The Supreme Court previously found that a district court order to "facilitate" the return of a wrongfully deported noncitizen "and to ensure that his case is handled as it would have been had he not been improperly sent to" his home country is proper. *Noem v. Abrego Garcia*, 145 S.Ct. 1017, 1018 (2025). "It has been the Government's own well-established policy to 'facilitate [an] alien's return to the United States if . . . the alien's presence is necessary for continued administrative removal proceedings' in cases where a noncitizen has been removed pending immigration proceedings." *Abrego Garcia*, 145 S.Ct. at 1018 (Sotomayor, J., concurring) (citing U. S. Immigration and Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012)).

Though this case is, and must remain, collateral to that of Doe's removal proceedings, the Court sees no other option than to order his return. To obtain the constitutionally-promised judicial review of the actions taken to terminate Doe's CAT Deferral, his case must reach a circuit court. But it is solely due to the actions taken by the Executive here that there is *no case*

and *no record* to take to the COA. If the Court does not grant this Motion, his case cannot be heard. The Court therefore will follow the procedural blueprints in *Khouzam* and *Abrego Garcia.* The Court grants the Motion and orders that the Defendants take "active" steps, as detailed in the accompanying order, to facilitate Doe's return to the United States. *Abrego Garcia*, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025). The Court further orders that once he is in the United States, if Doe is to be detained, he must be detained within 200 miles of this Court in Baltimore, Maryland, and have reasonable access to his attorneys though in-person or virtual meetings. This Court will require Defendants to file daily status reports until Doe returns.

**CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiffs' Motion for a Temporary Restraining Order and order that the Defendants immediately facilitate Plaintiff John Doe's return to the United States. The Court further orders that if detained, Doe must be detained within 200 miles of Baltimore, Maryland, and must have access to his legal counsel. An implementing Order is filed herewith.

Date: August 21, 2026

________/s/____________________
Stephanie A. Gallagher
United States District Judge