**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JOHN DOE, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| | * | **Civil Case No.: SAG-26-3330** |
| **v.** | * | |
| | * | |
| **ROBERT GUADIAN, *et al.*,** | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

Defendants Robert Guadian, the Field Office Director of the Washington D.C./Baltimore ICE Field Office, Todd Blanche, the Attorney General of the United States, Markwayne Mullin, the Secretary of Homeland Security, and Marco Rubio, the Secretary of State (collectively, "Defendants") have filed a Motion for Reconsideration (ECF No. 16) of this Court's August 21, 2026, Order (ECF No. 5), granting Plaintiff John Doe and his two minor children's Motion for a Temporary Restraining Order (ECF No. 2).

For the reasons stated below, this Court will deny Defendants' Motion.

## DISCUSSION

### I. Standard of Review

Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). Rule 54(b) of the Federal Rules of Civil Procedure governs motions for reconsideration where an order "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."

The Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, however, courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration. *See Jahn v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 4559927, at *1 (D. Md. May 13, 2020). Motions under Rule 59(e) may only be granted "(1) to

accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Rule 60(b) allows for relief only where there is "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)–(6). As a general matter, however, "'a motion to reconsider is not license to reargue the merits or present new evidence' that was previously available to the movant." *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001)).

## II. Subject Matter Jurisdiction

Defendants' Motion failed to address or identify any alleged errors contained in the jurisdictional analysis in the Court's Order. The Motion similarly failed to address the binding Supreme Court and Fourth Circuit case law that the Court relied upon in finding subject matter jurisdiction to adjudicate this claim. As previously stated in the Court's Order, this Court is bound by current Fourth Circuit precedent, and declines to ignore the Fourth Circuit's recent published opinion in *Suri v. Trump*, 184 F.4th 260 (4th Cir. 2026). Applying the Fourth Circuit's jurisdictional determinations, as this Court must and as Defendants failed to do, the Court finds that it has subject matter jurisdiction over these claims.

The Court will emphasize that the sole question that the Court addressed is whether Doe received the due process required by the Fifth Amendment prior to his removal from the United States, and as a result, whether his removal was valid. This makes this claim analogous to *Noem v. Abrego Garcia*, 604 U.S. ----, 145 S.Ct. 1017 (2025), in which the Supreme Court found that a judge in this district "properly require[d] the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case [was] handled as it

would have been had he not been improperly sent to El Salvador." *Id.* at 1018. In such cases, "the proper remedy is to provide [him] with all the process to which he would have been entitled had he not been unlawfully removed," and "the Government must comply with its obligation to provide [him] with 'due process of law,' including notice and an opportunity to be heard." *Id.* at 1019 (Sotomayor, J., respecting the Court's disposition).

None of the arguments in Defendants' Motion are persuasive, as they all relate to issues that the Court either already rejected or need not have addressed. Defendants cite 8 U.S.C. §§ 1252(a)(4); 1252(a)(5); 1252(b)(9); and section 2242(d) of the Foreign Affairs Reform and Restructuring Act (FARRA) as provisions that strip this Court of jurisdiction to hear this claim.[1]

This Court has already addressed § 1252(a)(4) and recognized that this statute "does not, as Defendants seem to suggest, apply to any claim that simply relates to CAT." *D.V.D. v. U.S. Department of Homeland Security*, 821 F.Supp.3d 102, 136 (D. Mass. 2026). Instead, "courts have uncontroversially interpreted section 1252(a)(4) to provide federal courts of appeal with exclusive 'jurisdiction to review a noncitizen's factual and legal challenges to a denial of relief pursuant to the CAT, or CAT order.'" *Id.* (citing *Ali v. Garland*, 33 F.4th 47, 54 (1st Cir. 2022); *Nasrallah v. Barr*, 590 U.S. 573, 585 (2020) ("[Section] 1252(a)(4) now provides for direct review of CAT orders in the courts of appeals."); *Suradi v. Sessions*, 701 F. App'x 633, 634 (9th Cir. 2017) ("We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(4), which 'encompasses legal and constitutional issues arising from claims for deferral of removal under

---

[1] Most of these arguments were not properly brought before the Court in Defendants' earlier briefing and have been raised for the first time in the Motion for Reconsideration. This Court, however, must establish that it has subject matter jurisdiction over any claim brought before it, and will therefore address these arguments despite their belated introduction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

CAT.'"); *Subrata v. Att'y Gen. of U.S.*, 378 F. App'x 226, 228 n.1 (3d Cir. 2010)). Here, Doe is not challenging denial of relief pursuant to the CAT, and § 1252(a)(4) does not bar jurisdiction.

Defendants next argue that §§ 1252(a)(5) and 1252(b)(9) preclude this Court's jurisdiction over these claims. (ECF No. 16-1 at 3). These provisions are similarly unpersuasive, as the Fourth Circuit in *Suri* found that neither provision barred district court review of unconstitutional executive action. *See Suri*, 184 F.4th at 283–85. Section 1252(b)(9) is plainly inapplicable here, as the Fourth Circuit has explicitly recognized that "the provisions that follow § 1252(b)—§ 1252(b)(1) through (9)—are requirements that apply only to the review of an order of removal." *Id*. at 289. "Here, [Doe] is not seeking judicial review of an order of removal. Thus, § 1252(b)(9) (or any of § 1252(b)'s subsections) does not apply." *Id*. (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (determining a statute's meaning requires reviewing "the specific context in which that language is used, and the broader context of the statute as a whole"). For the same reasons, § 1252(a)(5) does not bar this Court's review, as this provision "only applies to an order of removal, and no order of removal is at issue here." *Id*. at 298. This Court is therefore satisfied that under binding Fourth Circuit precedent, these provisions do not deprive the Court of subject matter jurisdiction to review Doe's claim.

The final provision that Defendants claim bars jurisdiction is FARRA § 2242(d). But that provision is similarly inapplicable. It bars district courts from hearing claims for protection under the CAT but does not bar claims against the government for having failed to provide due process. *See Mironescu v. Costner*, 480 F.3d 664, 674 (4th Cir. 2007) holding that § 2242(d) barred a district court from finding an individual eligible for CAT relief and enjoining his extradition on those grounds) ; *Cruz Medina v. Noem*, 806 F.Supp.3d 536, 545 (D. Md. 2025) ("At most, this argument relates to Petitioner's eligibility for relief under the Convention Against Torture."); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886,

at *9 (D. Md. Oct. 7, 2025) ("Where [a petitioner] does not contest a ruling under CAT on whether he has a reasonable fear of torture but instead advances a procedural due process claim based on the lack of an opportunity to even present a claim for IJ review, the Court finds that FARRA § 2242(d) does not bar his claim."). Here, the issue is whether Doe received due process prior to his removal from the United States, not whether he is eligible for protection under the CAT. The Court therefore finds that this statute does not bar jurisdiction over Doe's claims.

**III. Due Process Violations**

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The new facts alleged by Defendants[2] make it even more clear that Doe's removal to Mexico violated his constitutional right to procedural due process. Defendants previously represented to the Court that the Notice of Termination was served on July 21, 2026, eleven days before he was removed from the U.S. on August 1, 2026. (ECF No. 4 at 3). Now, Defendants instead state that he was served with the Notice on August 1, 2026 – *the same day that he was removed*. (ECF No. 16-1 at 12).

Here, the Court solely addresses the topic of whether Doe was given constitutionally sufficient process prior to his removal to Mexico, or whether Defendants' actions exceeded their *lawful* authority by removing him to a country where he has been found by an IJ to face a risk of torture "without the semblance of due process that is the foundation of our constitutional order." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025). The process that Defendants used to terminate Doe's CAT Deferral is one that

[2] Although the Court is not obligated to accept evidence submitted well after the hearing and Order on the Motion that was previously available to Defendants, the Court will consider this late evidence and new facts in its analysis. *See Carrero*, 310 F. Supp. 3d at 584.

has been held by the Third Circuit to be constitutionally inadequate. *Khouzam v. Attorney General of the U.S.*, 549 F.3d 235, 259 (3d Cir. 2008). Defendants failed to provide Doe with any notice of the termination until the day he was removed from the United States, even though his CAT Deferral had been terminated ten days earlier. (ECF Nos. 4 at 3; 16-1 at 12).

Although the Court's Opinion and due process analysis borrowed heavily from *Khouzam*, as previously noted, this case is in an entirely different procedural posture because Doe was removed from the country before its filing. (ECF No. 4 at 11 n.9). The Court mentioned that "Doe's removal from the United States only ten days after the Notice was purportedly served, without any notice of the termination to his attorneys [. . .] exacerbates the due process concerns." (*Id.*). The new facts before the Court, that Doe was served with the Notice *on the day of* his removal, only further exacerbate these process-based concerns. The parties appear to agree that the validity of the termination of CAT Deferral is an issue for a Court of Appeals to decide.[3] If a Court of Appeals ultimately decides that the termination itself was valid, and Doe receives sufficient process with respect to the termination, Defendants may lawfully deport him. But Defendants did not provide Doe with sufficient process when they summarily terminated his CAT Deferral with no notice and served him with the Notice of Termination the same day that they deported him to Mexico. When a noncitizen has been unlawfully deported and seeks return to the United States to "ensure that his case is handled as it would have been had he not been improperly" removed, it is within this Court's authority to order the government to facilitate his return. *See Noem v. Abrego Garcia*, 604 U.S. ----, 145 S.Ct. 1017, 1017 (2025).

---

[3] The question of *which* Court of Appeals remains to be determined. Doe has filed a Petition for Review in the Third Circuit, the circuit in which his initial immigration court proceedings were held. At the time of this Order, that court has yet to determine whether it has the ability or authority to review his claim in the absence of any appellate record.

Defendants claim that the summary same-day removal of Doe comported fully with the regulatory provisions found in 8 C.F.R. §§ 208.17(f) and 208.17(c). (ECF No. 16-1 at 7–10). At the hearing on this Motion, Defendants repeatedly claimed that no statute or regulation had been alleged to have been violated. But the Court's Order and determination here is based in the evident violations of the Fifth Amendment of the United States Constitution, not a statute or regulation. The lack of procedural regulations in § 208.17 does not "expressly direct[] the Executive to act in a manner that offends the Fifth Amendment." *Khouzam*, 549 U.S. at 258.

"Due process" is not simply an afterthought; it is a part of our fundamental constitutional order. *Shelby County, Ala. v. Holder*, 570 U.S. 529, 542 (2013). It is entirely irrelevant to the Court's analysis that there is no regulation or statute governing the process for termination of CAT Deferral by diplomatic assurances, as the constitutional guarantee of due process underlies every statute, regulation, or executive action in this country. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."); *Khouzam*, 549 F.3d at 259 ("We have recognized the adequacy of process generally afforded aliens facing removal in other contexts, and have no doubt that the Government can readily adapt such processes to removal based on diplomatic assurances."). Even if there were a delineated process in the regulations, that process could be subject to judicial review on due process grounds. *See e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 702 (2001) (requiring that immigration detention comply with due process requirements).

For these reasons, the Court rejects Defendants' argument that Doe's removal was constitutionally sufficient and will not grant reconsideration.

## IV. Venue

Defendants also argue that Maryland is an improper venue. This action was brought against multiple federal officers in their official capacities, and pursuant to 28 U.S.C. § 1391(e)(1), the action may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e)(1).

The Court "may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Venue transfer under § 1404(a) is discretionary, based on an "individualized, case-by-case consideration of convenience and fairness." *United States of America ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts must first determine whether the action could have been brought in another district. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469–70 (D. Md. 2008). If yes, courts consider several non-exclusive factors to determine if transfer is warranted, such as "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (citing *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256–52 (E.D. Va. 1988)); *see also Ramos-Lopez v. Bondi*, --- F.Supp.3d ----, 2026 WL 1745700, at *5 (D. Md. June 17, 2026).

The Defendants argued at the hearing that this action should have been brought in the Western District of Louisiana, as that was where they initially believed that the Notice was served on Doe and where witnesses to this service may be located. Nonetheless, particularly given the new contradictory evidence, the Court finds that the transfer factors do not support transferring this action.

First, as to a plaintiff's choice of venue, "'[u]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *ComScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc*., 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)). As Maryland is the venue where Doe was initially detained, and where he and the two minor Plaintiffs live and choose to remain, their choice of forum cuts decidedly against transfer. *Martinez v. Bynum*, 461 U.S. 321, 330–31 (1983).

Second, although witness convenience is "[p]erhaps the most important factor to be considered," *Cronos Containers, Ltd. v. Amazon Lines, Ltd*., 121 F. Supp. 2d 461, 466 (D. Md. 2000), the Defendants have not identified specific witnesses necessary to adjudicate the merits of the case, or that any witnesses would particularly "suffer if the case were heard in the plaintiff[s'] chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002). This case turns on the legal question of whether Doe received due process. The analysis involves allegedly wrongful removals, as well as allegations of improper actions and lack of access to counsel, from facilities in Louisiana, Texas, and Florida. Despite Defendants' initial representations to the Court that the Notice was served in Louisiana, new evidence submitted with the Motion indicates that the Notice was instead served in Texas. (ECF No. 16-2). To the extent that any witness may need to be called from any of the three aforementioned states, this relatively minor travel inconvenience does not override the Plaintiffs' choice of forum.

Third, the convenience of the parties "is chiefly operative in cases where the plaintiff chooses a forum away from home." *Bd. Trs., Sheet Metal Workers Nat. Fund*, 702 F. Supp. at 1259. But in cases where "the plaintiff resides in the forum state, the matters at hand focus on questions of law, and the Defendants are the United States and its Executive departments, any

relative inconvenience that arises from denying the transfer request pales in comparison to honoring the plaintiff's chosen forum." *Ramos-Lopez*, --- F.Supp.3d ----, 2026 WL 1745700, at *5 (citing *MedServ Int'l, Inc. v. Rooney*, No. 8:05-CV-3173-AW, 2006 WL 8457082, at *3 (D. Md. Feb. 7, 2006)).

Last, the interests of justice inquiry "encompass[es] all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 857 (D. Md. 2005). This includes whether the plaintiff's chosen venue maintains sufficient familiarity with the applicable law. *See Topiwala v. Wessell*, No. CIV. WDQ-11-0543, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012). Where, as here, the claims center on questions of federal constitutional and statutory interpretation, no court is any more or less familiar than any other. Thus, the interests of justice also do not require transferring the case.

## V. Court's Authority to Restrict Place of Detention

Defendants finally argue that this Court lacks the authority to order that Doe be detained within 200 miles of Baltimore, Maryland, as the location of detention is within the Attorney General's authority and discretion. (ECF No. 16-1 at 10). Defendants claim that "[t]he most significant issue regarding this portion of the Order is availability of bed space given there are only 3 ICE detention facilities within 200 miles of Baltimore" and that "[t]he place of detention is left to the discretion of the Attorney General." (ECF No. 16-1 at 10) (citing 8 U.S.C. § 1231(g)(1)).

First, this 200-mile radius includes all of New Jersey, most of Pennsylvania and Virginia, and parts of New York and West Virginia. According to publicly available ICE

resources, the following facilities are all within a 200-mile radius of Baltimore, Maryland:[4] Caroline Detention Facility, Bowling Green, VA; Farmville Detention Center, Farmville, VA; Moshannon Valley Processing Center, Phillipsburg, PA; Delaney Hall Detention Facility, Newark, NJ; Elizabeth Contract Detention Facility, Elizabeth, NJ; as well as a multitude of smaller detention centers in the aforementioned states. The Court therefore does not find that this is a significant burden on the Defendants, particularly given that judges in these states regularly order that an individual remain detained within much smaller radii in habeas proceedings. *See e.g.*, *Pineda-Berrios v. Lyons*, No. 1:25-CV-2332 (LMB/LRV), 2026 WL 384159, at *4 (E.D. Va. Feb. 11, 2026) ("The Court [ ] entered an Order requiring that he not be removed or transferred from [the Eastern District of Virginia] for any reason without this Court's permission.").

Second, this Court "undeniably has an 'inherent authority to protect [its] proceedings,' and to 'meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations.'" *Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (citing *Degen v. United States*, 517 U.S. 820, 823 (1996); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)) (cleaned up). Although 8 U.S.C. § 1231(g) directs the Attorney General to "arrange for appropriate places of detention

4 

for aliens detained pending removal or a decision on removal," this statute "'does not address transfers [of noncitizen detainees] at all,' and it surely does not 'explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers.'" *Ozturk v. Hyde*, 136 F.4th at 396 (citing *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019)). "Indeed, § 1231(g) appears to relate more centrally to the government's brick and mortar obligations for obtaining facilities in which to detain aliens." *Reyna as next friend of J.F.G.*, 921 F.3d at 209.

Here, the Court ordered Defendants to detain Doe within a 200-mile radius of this courthouse due to the particular circumstances of this case and the due process violations alleged. There are significant allegations of improper conduct here, including a lack of access to counsel, multiple wrongful deportations, Doe not being on the ICE detainee locator, and the same-day summary Notice of Termination as Doe was being removed from the United States. Doe's attorneys are located in Baltimore, Maryland, and if an evidentiary hearing is held in this case, it will be here. The Court thus finds that it is within the Court's authority to order his detention within this radius, to ensure that he will be able to be present for any future proceedings and have access to his legal counsel. The 200-mile radius encompasses many larger detention facilities, which should not impose too severe a burden on Defendants, while still protecting this Court's ability to conduct its proceedings.

**VI. Preliminary Relief**

The Court's Order was issued as a Temporary Restraining Order ("TRO"), requiring Defendants to facilitate his return to the United States within 14 days of the Order. (ECF No. 6). He has now been returned to the United States. The Court's Order restricting the place of detention has now extended beyond 14 days, the period for a TRO. Fed. R. Civ. P. 65(b)(2).

Doe's Motion for a Temporary Restraining Order or Preliminary Injunction (ECF No. 2) requested either form of preliminary relief, and the Court now finds it appropriate to convert

its order to a preliminary injunction. Doe properly sought a preliminary injunction, Defendants received notice of the request, and the Court held hearings regarding Doe's Motion, fulfilling the requirements for issuing a preliminary injunction under Fed. R. Civ. P. 65(a). The Court therefore converts its Temporary Restraining Order (ECF No. 6) into a Preliminary Injunction. As neither party addressed bond in their briefing, the Court further orders that Doe post a nominal security in the amount of $1.00 pursuant to Fed. R. Civ. P. 65(c).

## VII. Amendment of Complaint

Plaintiffs have repeatedly expressed an intent to amend their complaint to account for the facts learned after its filing. To permit this case to proceed expeditiously, this Court will order that an amended complaint be filed on or before September 28, 2026.

## VIII. Conclusion

For the reasons stated above,

1. Defendants' Motion for Reconsideration (ECF No. 16) will be DENIED;
2. The Court's Temporary Restraining Order (ECF No. 6) will be converted into a Preliminary Injunction, and Defendants may only detain Doe within a 200-mile radius of Baltimore, Maryland;
3. Plaintiff John Doe shall post security of $1.00; and
4. Plaintiffs will be ordered to file an amended complaint on or before September 28, 2026.

A separate order follows.

September 14, 2026

/s/
Stephanie A. Gallagher
United States District Judge